FRED W. JONES, Jr., Judge.
Plaintiff bank sued defendant Tabor for the balance allegedly due on a promissory note and, in connection therewith, for the recognition of mortgages securing promissory notes assertedly given as collateral security for the note sued upon. Defendant generally denied the allegations of the petition. After a trial on the merits, judgment was rendered in favor of plaintiff as prayed for, except for the allowance of a smaller sum for attorney fees than requested in the suit.
Defendant appealed, contending the trial court erred in:
(1) Holding there was a pledge of collateral mortgage notes to secure the hand note sued upon.
(2) Incorrectly calculating the balance due on the hand note sued upon.
(3) Granting a deficiency judgment prior to a sale of any property securing the debt sued upon.
(4) Signing the final judgment in chambers rather than open court.
(5) Admitting a “continuing guaranty” into evidence.

Factual Context

On November 7, 1978, George S. Tabor executed a $500,000 Continuing Guaranty (also referred to as a General Collateral Pledge). This document provided:
In consideration of [the Bank] at our request, giving or extending terms of credit to GEORGE STEVEN TABOR hereinafter called debtor, we hereby give this continuing guaranty ... for the payment in full ... of any indebtedness ... now existing or hereafter arising.
The back of the agreement contained this sentence:
The Continuing Guaranty granted by me on the reverse hereof is secured by the pledge and delivery of the following property ...
Blanks were provided under the caption “List Below Collateral Pledged”.
First United Bank [previously known as Farmerville Bank] listed one collateral mortgage previously executed by Tabor and several collateral mortgages subsequently executed by Tabor in these blanks and had Tabor initial each one.
Each time a new hand note was executed, the Bank would mark the old hand note “paid by renewal” and deliver it to Tabor.
On January 13, 1983, Tabor executed a $285,518 “Term Loan” (also referred to as a hand note or promissory note). This hand note represented a renewal of the total amount Tabor owed the Bank as of April 14, 1983. [It is not evident whether interest was pre-computed for the time the note was executed until its maturity or whether the Bank gave Tabor a three-month grace period in which to pay the debt]. The Bank did not require Tabor to *515 execute a new collateral mortgage or collateral mortgage note at this time.
The hand note provided for a loan finance charge at the rate of 13.5% per an-num from maturity [April 14, 1983] until paid. In addition, the note provided:
On the date of this note I hereby waive prescription and renew my obligations to pay all collateral notes and obligations upon which I am either maker, endorser or guarantor that are now held by [the Bank] as pledgee or in any other capacity.
A notation on the back of the hand note stated:
Sec. by GCP d 11/7/78 also sec by m/n d 8/11/82 amt. $70,000 on house & lots;
/s/ George S. Tabor
George S. Tabor
On November 10, 1983, the Bank filed suit against Tabor for $286,345.02, the balance allegedly due on the hand note. The Bank sought interest at the rate of 13.5% per annum from April 14, 1983 until paid, or until April 14,1984, and after that at the legal rate of interest, together with 25% of the total amount of principal and interest due as attorney’s fees and all costs. The Bank also prayed for recognition of the collateral mortgages against Tabor’s property identified with certain collateral mortgage notes allegedly pledged to secure the debt, sale of the encumbered property with benefit of appraisal, and a deficiency judgment if necessary.
Tabor’s answer generally denied all allegations in the Bank’s petition. In addition, Tabor alleged the 25% attorney’s fees was excessive and should be reduced, and the amount of interest due on the hand note was incorrectly calculated by the Bank.
The trial court rendered judgment as prayed for by the Bank, except it only awarded $20,000 rather than 25% as attorney’s fees.

Pledge of Collateral Mortgage Notes

Defendant argues the trial court erred in finding that collateral mortgage notes were pledged to secure the hand note sued upon.
The unique nature of the collateral mortgage, a specie of conventional mortgage created by our jurisprudence, has been extensively analyzed in appellate court cases and scholarly law review articles. For example, see Nathan and Marshall, The Collateral Mortgage, 33 La.L.Rev. 497 (1973).
There seems to be general agreement that the purpose of the collateral mortgage package is to confect a mortgage note that can be pledged as collateral security for either a pre-existing debt, for a debt created contemporaneously with the mortgage, for a future debt, or for a combination of these. Therefore, the package represents a blend of pledge and mortgage, drawing upon both for its efficacy but not fully on either. The collateral mortgage note or “ne varietur” note is not the evidence of the indebtedness, but is merely the security that will be pledged as collateral for the true debt. Consequently, the mortgagor must also become a pledgor of the collateral mortgage note itself to the creditor to secure a debt which is generally but not necessarily evidenced by a hand note.
Defendant here argues that the Continuing Guaranty was a surety agreement and cannot be construed as a pledge; that on the front of the document he only agreed to serve as guarantor for his own debt; that pledge language on the back of the form indicated that the pledge was only to secure the Continuing Guaranty; that the front and back of the agreement must be construed in their entirety and, consequently, can only bind the defendant for the debts owed on the date the Continuing Guaranty was executed (November 7,1978) and not for any subsequently incurred debts.
The Continuing Guaranty form in this case was obviously designed for use where a third party surety was guaranteeing the debt of another to the Bank, with the reverse of the form available when the surety pledged property to secure his obligation as surety. See La.Civil Code Article 3140.
Rather than having a third party act as surety for this debt, the front of the *516 form in question simply provided that, in consideration of the Bank extending credit to “George Steven Tabor hereinafter called debtor”, the Continuing Guaranty was given to the Bank for the payment of any present or future indebtedness by the debt- or. In other words, defendant executed the Continuing Guaranty to secure his own debt. Although a rather unusual procedure, this is not legally prohibited.
The Continuing Guaranty provided that in consideration for the Bank extending credit to Tabor, the latter would guarantee payment of any present or future indebtedness up to $500,000. The back of the hand note provided it was secured by the General Collateral Pledge. Tabor’s signature indicated his intention to pledge the collateral mortgage notes as security for his debt.
Bank officials testified that it was the intention of the parties for Tabor to obtain a $500,000 line of credit at the Bank and to pledge certain collateral mortgage notes as security for present and future indebtedness.
Considering all the described evidence, we find that the Continuing Guaranty can be validly construed as a pledge of the collateral mortgage notes. Furthermore, after the Continuing Guaranty was originally signed on November 7, 1978, several mortgage notes were added to the list of pledged property. Each time a new mortgage note was added, Tabor initialed the addition. This constitutes evidence of his intent to pledge each of those collateral mortgage notes to secure his indebtedness.
In view of this determination with reference to the Continuing Guaranty, it was admissible in evidence and the trial judge correctly so ruled. Defendant’s complaint on this issue is without merit.

Calculation of Amount Due on Hand Note

Defendant contends the trial court erred in calculating the amount due on the hand note sued upon.
The judgment rendered against defendant is for $286,345 together with interest at the rate of 13.5% per annum from April 14, 1983 until paid, or until April 14, 1984, and thereafter at the rate of legal interest until paid.
The hand note, dated January 13,1983, is for the principal amount of $285,518, with a maturity date of April 14, 1983. It further provides:
If this is a precomputed consumer transaction it is to bear the same loan finance charge (13.5%) until one year after the date of its maturity and thereafter the loan finance charge shall be eight per cent per annum.
The assistant cashier at plaintiff bank testified that $285,518 represented the amount of principal and interest due on the hand note by defendant on the date it was signed and that defendant was entitled to a credit of $4,251 for a payment made on March 15, 1984. In addition the Bank incurred expenses of $2,391 spent in preserving the property, to which it was entitled to reimbursement. La.C.C. Article 3167.
Based upon these figures, the judgment in favor of the Bank and against Tabor should have been for the principal amount of the hand note (285,518), with interest thereupon at 13.5% from April 14, 1983 until April 14, 1984, and thereafter at the rate of 8% (rather than 12%) per annum, until paid, subject to a credit of $4,251 paid on March 14, 1984. The Bank is also entitled to a judgment of $2,391 for reimbursement of funds spent to protect the mortgaged property.

Miscellaneous

Defendant asserts the trial court committed error in granting a deficiency judgment prior to sale of the mortgaged property. The clause in question, in the judgment, provides that “in the event of a deficiency that petitioner shall have a deficiency judgment for said amount of deficiency.” Contrary to defendant’s argument, this language does not constitute a deficiency judgment. It merely recognized the obvious, i.e., that the Bank can secure a deficiency judgment if there is a deficiency after sale of the mortgaged properties, provided the requirements of law are met. There is, therefore, no merit in defendant’s contention.
*517 Further, no error was committed by the trial court in signing the judgment in chambers. Unless expressly mandated by law that it be signed in open court, any judgment may be signed in chambers. La. C.C.P. Article 194.

Decree

For the reasons set forth above, we amend the judgment of the trial court to provide that there shall be judgment in favor of First United Bank and against George Steven Tabor for $285,518, together with interest thereupon at the rate of 13.5% from April 14, 1983 until April 14, 1984, and thereafter at the rate of 8% per annum until paid, subject to a credit of $4,251 paid on March 14, 1984. There is further judgment in favor of First United Bank and against George Steven Tabor for $2,391.51, together with legal interest thereupon from date of judicial demand until paid. As amended, the judgment of the district court is affirmed, with cost of appeal divided equally between appellant and appellee.